LAMBERT J. BOCKTING, Appellant, v. WILHELMINA BOCKTING, MARY GIBBS, FREDERICK C. BOCKTING, and ROBERT A. SMITH, Trustee, JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Boston, Massachusetts, Respondents.—No. 40975.—217 S. W. (2d) 538.

Division One, February 14, 1949.

*Luman Spry* for appellant.

*Wilbur F. Daniels* for respondents.

[**539**] CLARK, J.—Plaintiff sued his ex-wife and their son to set aside two deeds to real estate on the grounds of false representation and undue influence. The decree was for defendants and plaintiff appeals.

Respondents have filed a motion to dismiss the appeal for failure of appellant to file a proper brief in compliance with our rule 1.08. The purported statement of facts is somewhat argumentative and contains not a single citation to a page in the transcript. We would be justified in dismissing the appeal, but are reluctant to do so and will decide the case on the merits.

Appellant and respondent Wilhelmina were married in 1916. To that marriage were born six children, the eldest of them being respondent Frederick. Appellant had two children by a former marriage. At the time of the trial appellant was 72 years of age, respondent Wilhelmina was 52 and Frederick was 31. For many years after the marraige the parties rented and operated a farm as tenants. One by one all the children except respondent Frederick left and established homes for themselves. In February, 1941, respondent Wilhelmina negotiated the purchase of the 148 acre farm the title to which is now in dispute. A down payment of $700.00 was made and a deed of trust for $4,300.00 was executed. The title was taken in the names of appellant and Wilhelmina as husband and wife. Appellant testified that the down payment was his money, Wilhelmina testified it was hers. The evidence is undisputed that she made the deal and that appellant took no part in the negotiations and probably did not want the purchase made. The parties moved upon the farm and thereafter Wilhelmina managed it, collected the income and deposited it in her own name, paid the expenses including the interest and some payments on the principal of the deed of trust. The work on the farm was done by respondent Frederick. Appellant did not work except on rare occasions he performed chores around the house. There was some evidence that during part of the time appellant's health was not good. In later years he suffered from high blood pressure and swollen feet. For this trouble he was in a hospital under the treatment of Dr. Shaw for three days in February, 1947.

On September 3, 1947, appellant and his wife, Wilhelmina, conveyed the farm to a straw person, Mary Gibbs, and she conveyed it to Wilhelmina and Frederick. These are the deeds which appellant now seeks to set aside.

■ As stated, the petition is based upon false representation ·and undue influence. The only testimony of a representation was given by appellant. He said that his son, Frederick, told·him, in substance, that as the title stood appellant owned no interest and he had better have it·changed. But appellant also testified that he·knew the·title stood in·the joint names of himself and wife and believed the farm was owned by them ''fifty-fifty.''·

·· Appellant's testimony was contradicted by the respondents. Wilhelmina said that appellant came to her· on August 30, 1947, and said: '' 'What·do you think about making my part of the farm over to Cap [nickname for Frederick]?' I said: 'What is that for?' And he· said, 'Well, the rest of the children don't do·anything.' And I said, 'I won't have anything to·do with it.' And·I didn't have anything to do with it, except I signed the deed.' ''

·''I didn't care· about it because it was a· joint deed, and after he was gone it would be ·mine ·anyway.''

[540] Respondent Frederick testified that appellant· told· him ''Well, the rest of them won't do anything and I think I will deed my half to you.'' ·A few days later appellant and· respondents went to town and Frederick, after consulting with the agent of the holder of·the deed·of trust, procured a lawyer to prepare the deeds and they were executed. . Shortly thereafter appellant went to the home of one of his 'other children. Both respondents testified that· they expected him·to return and they were willing· to support and care for· him. He did· not return and Wilhelmina later procured a· divorce.

Appellant's testimony of a false representation as to the state of the· title was contradicted by his own admission that he knew how the title stood. His testimony was· also contradicted by respondents and we cannot say that the chancellor, who saw and heard the· witnesses, erred in ruling that issue against appellant. ··

Appellant's motion for new trial·in the trial court and· his points in this court are couched in such general terms that they do not clearly present any question for review. However, he does argue generally the questions of undue influence and rulings on evidence.

■ ■ As to undue influence the brief states that, by reason of age, and illness, appellant's mind had been .so impaired. as to make him easily influenced. There is no. evidence and no ·claim that. he is a person of unsound mind. The only real evidence as to his mental incapacity was given by Dr. Shaw who saw him three days in February, 1947. The doctor said he was then suffering from high blood pressure and would *then* have been incapable of making a deed, but he also said .appellant left the hospital much improved. Some of appellant's children testified that his memory was not good, but none of them related any incident which tends to raise an inference of mental incapacity. On the contrary, many disinterested witnesses, who saw and talked with appellant frequently over a long period,

894

testified that there was nothing to indicate that his mind was unsound or had deteriorated.

In his rulings upon the evidence the chancellor was liberal with appellant. In some instances he stated that he believed evidence offered by appellant was not admissible, but he would hear the whole story. Over appellant's objection he admitted a number of checks given by respondents. It was admitted, in effect, that the account came from the income from the farm. The checks may have been immaterial, but we fail to see how they could be prejudicial.

Appellant says that a confidential relation existed between the parties which cast the burden upon respondents to prove that they did not influence appellant to make the deed. Such is not the law. We may assume that a confidential relation, arising out of the close kinship of the parties, did exist. Also, that the deed being only for a nominal consideration the chancellor was required to more carefully consider the testimony, but the burden of proof remained upon appellant to prove undue influence.

We have carefully read the transcript. There is one conflict in the evidence, but we believe it preponderates in favor of respondents.

All the points made by appellant have been decided by this court contrary to his contentions and, upon evidence stronger than he produced, we have refused to set aside deeds. See the following cases: Lastofka v. Lastofka, 339 Mo. 770, 99 S. W. (2d) 46; Hamilton v. Steininger, 350 Mo. 698, 168 S. W. (2d) 59; Horn v. Owens (Mo.) 171 S. W. (2d) 585. Undue influence will not be inferred from confidential relation. Burden of proof remains with plaintiff. [Edinger v. Kratzer (Mo.) 175 S. W. (2d) 807.] In equity appeals it is ordinarily unnecessary to reverse for improper rulings on evidence, as the appellate court will determine the issues from the competent evidence shown by the record.

The judgment is *affirmed*. All concur.